UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMIE N. GRIMES,<br><br>    Petitioner,<br><br>v.<br><br>TONY MAYS,<br><br>    Respondent. | Case No. 3:19-cv-00585<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:    The Honorable William L. Campbell, Jr., District Judge

### REPORT AND RECOMMENDATION

On February 16, 2011, a Tennessee jury convicted Petitioner Jamie N. Grimes of selling a controlled substance in a school zone. (Doc. No. 15-1.) Grimes was sentenced to twenty-five years of incarceration to be served concurrently with a thirty-year sentence he received on July 23, 2009. (*Id.*) Grimes has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in which he argues that his confinement is unconstitutional under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. (Doc. Nos. 1, 10, 11.) Respondent Tony Mays answered Grimes's petition and filed the state court record. (Doc. Nos. 15–17.) After filing a pro se reply (Doc. No. 23), Grimes retained counsel who filed a supplemental reply on his behalf (Doc. No. 41).

For the reasons that follow, having considered the parties' arguments, the underlying record, and the stringent standards of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), the Magistrate Judge will recommend that Grimes's petition be denied.

**I.      Background**

   **A.      Factual Background**

In its decision on Grimes's direct appeal of his conviction, Tennessee Court of Criminal Appeals (TCCA) provided the following summary of the evidence presented during Grimes's trial:

> Detective Justin Fox of the Metropolitan Nashville Police Department testified that on the afternoon of November 10, 2006, he conducted an undercover drug buy using a confidential informant. Det. Fox testified that he had used this particular confidential informant several times before, that she was "reliable," and that she was ultimately paid $200 for her participation in the drug buy. The confidential informant called [Grimes] and arranged to buy two ounces of cocaine from him for $1,400. [Grimes] called the confidential informant back a short time later and changed the location of their meeting.
>
> Det. Fox testified that he searched the confidential informant and found no money or contraband on her. Det. Fox equipped the confidential informant with an audio recording device. Det. Fox also gave the confidential informant "buy" money, which had previously been photocopied, and a set of digital scales. Det. Fox testified that he saw [Grimes] drive by in a black, 2003 F–150 pickup truck with a Tennessee Titans vanity plate. According to Det. Fox, the truck was registered to [Grimes]. Det. Fox testified that he watched the confidential informant walk up to the truck and get in on the passenger side.
>
> Det. Fox testified that once the confidential informant got into the truck, [Grimes] drove away. [Grimes] then parked a short distance away from where he had picked up the confidential informant. Det. Fox testified that he could see Fall–Hamilton Elementary School from where [Grimes] had parked. At no point did Det. Fox or any of the other officers observing the transaction see anyone else approach or get into Grimes's truck. Det. Fox testified that he only heard [Grimes] and the confidential informant on the audio recording of the drug buy.
>
> At trial, the audio recording of the drug buy was played for the jury. On the recording, the confidential informant could be heard having a phone conversation with [Grimes] as she approached his truck. [Grimes] was worried that the confidential informant was working for the police. Once inside [Grimes's] truck, the confidential informant could be heard counting out the money. [Grimes] and the confidential informant could also be heard discussing the price and weight of the cocaine. Det. Fox identified [Grimes's] voice as being the man's voice heard on the recording.
>
> Det. Fox testified that the confidential informant walked directly back to his car after she got out of [Grimes's] truck. When she got into Det. Fox's car, the confidential informant had a bag of white powder and a bag of white rocks. All of the "buy" money that Det. Fox had previously given the confidential informant was

gone. Both bags were eventually taken to the Tennessee Bureau of Investigation and tested. The white powder tested positive for cocaine and weighed 27.9 grams. The white rocks also tested positive for cocaine and weighed 25.7 grams.

David Kline of the Metropolitan Planning Department testified that the distance from where [Grimes] parked his truck to Fall–Hamilton Elementary School was approximately 235 feet. Steven Keel, director of school security for the Metropolitan Nashville Public School System, testified that on the day of the drug buy, Fall–Hamilton was an operational elementary school. Based upon the foregoing, the jury convicted [Grimes] of selling .5 grams or more of cocaine within 1,000 feet of an elementary school.

*State v. Grimes*, No. M2012-00530-CCA-R3-CD, 2013 WL 5761301, at *1–2 (Tenn. Crim. App. Oct. 22, 2013), *perm. app. denied*, (Tenn. Feb. 24, 2014).

### B. Procedural History

#### 1. Trial and Direct Appeal

In its order on Grimes's direct appeal of his conviction, the TCCA explained that

[p]rior to his trial for this offense, [Grimes] was convicted of possession of 300 grams or more of cocaine with intent to sell for an offense that occurred on December 8, 2006. *State v. Bobby Lee Robinson & Jamie Nathaniel Grimes*, No. M2009-02450-CCAR3-CD, 2011 WL 6747480 (Tenn. Crim. App. Dec. 22, 2011), *perm. app. denied*, (Tenn. May 17, 2012). On that day, the same confidential informant used in this case arranged to purchase cocaine from [Grimes] and two co-defendants. *Id.* at *1–2. However, unlike this case, the officers arrested [Grimes] and his co-defendants before the sale could take place. *Id.* at *2–3. The officers recovered approximately 160 grams of crack cocaine from [Grimes's] truck. *Id.* at *3. [Grimes] also consented to a search of his home where police discovered "a little over 300 grams" of cocaine. *Id.* at *3–4.

*State v. Grimes*, 2013 WL 5761301, at *2.

Before his trial in Davidson County Criminal Court for the November 10, 2006 offense, Grimes's counsel filed a motion to dismiss arguing that (1) Grimes's "right to a speedy trial ha[d] been violated" because twenty-three-months passed between his arrest and indictment; and (2) Grimes's charges in this case should have been joined with the charges for the December 8, 2006 offense for which he was previously tried and convicted. (Doc. No. 15-1, PageID# 79.) The motion to dismiss was denied (Doc. No. 15-1), and Grimes was tried and convicted "of selling

3

.5 grams or more of cocaine within 1,000 feet of an elementary school," *State v. Grimes*, 2013 WL 5761301, at *2. Grimes was sentenced to twenty-five years' incarceration to be served concurrently with the thirty-year sentence he had received for the December 8, 2006 offense. (Doc. No. 15-1.)

Grimes filed a motion for a new trial, which he amended twice, and which the trial court denied. (*Id.*) Grimes then filed a direct appeal, arguing that: (1) the November 10 and December 8, 2006 offenses should have been mandatorily joined; (2) the delay between his arrest and indictment violated his right to a speedy trial; (3) the indictment against him was defective for failure to cite the drug-free school zone statute; (4) his sentence was void because the trial court checked a box on the judgment form stating that Grimes had a release eligibility of thirty-five percent rather than being required to serve one-hundred percent of the mandatory minimum twenty-five year sentence under the drug-free school zone statute; (5) the evidence was insufficient to support his conviction; (6) the trial court erred by allowing the jury to view a transcript of the audio recording of the offense; and (7) the state improperly failed to disclose the terms of its contract with the confidential informant.[1] (Doc. No. 15-8.) The TCCA found that the trial court had incorrectly marked that Grimes had a release eligibility of thirty-five percent on the judgment form but rejected Grimes's argument that this error rendered his sentence void, as well as his other arguments. *State v. Grimes*, 2013 WL 5761301, at *9. The TCCA affirmed Grimes's conviction and twenty-five-year sentence and remanded the case to the trial court for entry of a corrected judgment reflecting that Grimes must serve one hundred percent of his sentence. *Id.* The Tennessee

---

[1] Grimes raised several other arguments in his brief (Doc. No. 15-8), which the TCCA found to have been "waived for various procedural defects[.]" *State v. Grimes*, 2013 WL 5761301, at *8. Because Grimes has not raised any of those arguments in his petition in this Court, they will not be addressed in this Report and Recommendation.

Supreme Court denied Grimes's application for permission to appeal on February 24, 2014. (Doc. No. 15-12.)

### 2. Post-Conviction Proceedings

On February 24, 2015, Grimes filed a petition for post-conviction relief in Davidson County Criminal Court (the post-conviction court). (Doc. No. 15-13.) Grimes argued that his trial counsel provided ineffective assistance by failing to adequately communicate with him regarding plea offers, trial strategy, and sentencing under the drug-free school zone statute, and by failing to competently argue the joinder and speedy trial issues on appeal. (*Id.*) Grimes also argued that the state knowingly failed to join his November 10 and December 8, 2006 offenses, which caused pre-indictment and post-indictment delays, interfered with trial counsel's ability to defend him, and violated his rights to due process and a speedy trial. (*Id.*) The post-conviction court held an evidentiary hearing on Grimes's petition (Doc. No. 15-14), and the TCCA provided the following description of the evidence presented at that hearing:

> At the post-conviction evidentiary hearing, trial counsel testified for [Grimes] that he represented [Grimes] at trial, filed the notice of appeal, and filed the appellate brief in the direct appeal of [Grimes's] conviction. Trial counsel withdrew, and another attorney "argued the appeal" to this court. Prior to the trial in this case, trial counsel also represented [Grimes] for the charge of possessing three hundred grams of cocaine with intent to sell on December 8, 2006. Trial counsel said he filed a motion to join that offense with the three offenses charged in this case because he "felt like . . . [the assistant district attorney general] was stacking, kind of holding back a few cards to play should he need them." Trial counsel made that argument to the trial court but was unsuccessful. Trial counsel also raised the joinder issue in [Grimes's] motion for new trial. He described his research of the issue as "extensive" and said he collaborated with [Grimes], "who had extensively briefed the issue as well."
>
> Trial counsel testified that he understood the difference between Fifth Amendment preindictment delay and Sixth Amendment right to a speedy trial. Post-conviction counsel asked why trial counsel argued preindictment delay but not speedy trial on direct appeal, and trial counsel answered, "I wouldn't be able to explain it." Post-conviction counsel also asked if trial counsel remembered anything about the two witnesses who could not be located, and trial counsel said no.

> On cross-examination, trial counsel testified that he became licensed to practice law in 1992 or 1993 and acknowledged that a "significant amount" of his practice involved criminal law. [Grimes's] family retained him to represent [Grimes] for a "rent-a-car charge," and he and [Grimes] formed an attorney-client relationship. [Grimes's] family then retained him to represent [Grimes] in the case for the charge of possessing three hundred grams of cocaine with intent to sell on December 8, 2006. Trial counsel filed a "bond motion" in that case. At the hearing on the motion, trial counsel learned about the charges in the instant case. He said that he was "hot as fish grease" at the assistant district attorney general for "stacking" the charges and that [Grimes's] family retained him to represent [Grimes] in this case.
>
> Trial counsel acknowledged that he and [Grimes] did not have any trouble communicating and that [Grimes] cooperated with him. However, counsel was "sick a whole lot" and "out of the office and back and forth in the hospital." He stated, "And seems like I recall explaining that to [Grimes's mother]. And, at some point, my conversations were almost entirely with [her], which I can understand relaying some of the information, [Grimes] may not have gotten it." The State asked if trial counsel remembered anything about the two witnesses who could not be located, and he answered, "No. I would've guessed that one of them may have been the confidential informant, but I'm not sure." He acknowledged that the trial court sentenced [Grimes] to the minimum punishment in the range, twenty-five years, for the offense.

*Grimes v. State*, No. M2017-00319-CCA-R3-PC, 2019 WL 117167, at *3 (Tenn. Crim. App. Jan. 7, 2019) (fifth, sixth, and nineteenth alterations in original), *perm. app. denied*, (Tenn. Jan. 7, 2019). The post-conviction court denied Grimes's petition, finding that Grimes had failed to show by clear and convincing evidence that trial counsel was deficient or that he had experienced any prejudice. (Doc. No. 15-13.) The TCCA affirmed the post-conviction court's judgment but noted that there were errors in the post-conviction court's order that inaccurately reflected the testimony given at the evidentiary hearing. *Grimes v. State*, No. M2017-00319-CCA-R3-PC, 2018 WL 1883494, at *3 n.1 (Tenn. Crim. App. Apr. 19, 2018), *perm. app. granted*, (Tenn. Aug. 10, 2018).

The Tennessee Supreme Court granted Grimes's application for permission to appeal and found that "[t]he order entered by the post-conviction court d[id] not accurately reflect what occurred at the evidentiary hearing . . . ." (Doc. No. 15-20, PageID# 692.) The Tennessee Supreme Court vacated the TCCA's post-conviction judgment and remanded the case to the post-conviction

court to enter a corrected order for the TCCA's reconsideration. (Doc. No. 15-20.) The post-conviction court entered an amended order denying post-conviction relief (*id.*), which the TCCA affirmed, *Grimes v. State*, 2019 WL 117167, at *6. The TCCA explained its reasoning as follows:

> Initially, we note that the fact section of [Grimes's] brief fails to comply with Rule 27(a)(6), Tennessee Rules of Appellate Procedure, which requires that an appellant's brief contain "[a] statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record." The statement of facts in [Grimes's] brief does not contain any evidence presented at the post-conviction evidentiary hearing.
>
> As to [Grimes's] claim that trial counsel was ineffective for failing to argue the speedy trial issue on direct appeal, the right to a speedy trial, which is guaranteed by the Sixth Amendment to the United States Constitution and by article I, section 9 of the Tennessee Constitution, "attaches at the time of arrest or indictment, whichever comes first, and continues until the date of the trial." *State v. Vickers*, 985 S.W.2d 1, 5 (Tenn. Crim. App. 1997). To determine whether a defendant's constitutional right to a speedy trial has been violated, this court must conduct the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). *See State v. Wood*, 924 S.W.2d 342, 346 (Tenn. 1996); *State v. Baker*, 614 S.W.2d 352, 353 (Tenn. 1981). Under the *Barker* analysis, the following four factors must be considered: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's assertion of the right to a speedy trial; and (4) the prejudice resulting from the delay. 407 U.S. at 530. The most important consideration is the prejudice factor. *State v. Simmons*, 54 S.W.3d 755, 760 (Tenn. 2001).
>
> Here, [Grimes] was indicted in September 2008 and tried in February 2011, a delay of more than two years. A delay of one year or longer will usually trigger an inquiry into a speedy trial violation. *State v. Vickers*, 985 S.W.2d 1, 5 (Tenn. Crim. App. 1997). However, our review of the trial record shows that [Grimes] did not allege a Sixth Amendment speedy trial violation in the trial court. Instead, he filed a motion again arguing Fifth Amendment preindictment delay. During a pretrial hearing on the motion, trial counsel argued that the delay between the November 2006 offenses and the September 2008 indictment was unreasonable, and the assistant district attorney explained that the reason for the delay was that another prosecutor was supposed to present the November drug-buys to the grand jury but failed to do so. Trial counsel never argued that the delay between the September 2008 indictment and the February 2011 trial was unreasonable, and therefore, the State never offered a reason for that delay. Moreover, [Grimes] did not provide any reason for the delay at the post-conviction evidentiary hearing. Most importantly, [Grimes] failed to present any proof at the hearing to show he was prejudiced by the delay. Although he claims he was prejudiced by his inability to locate two witnesses, he has offered no explanation as to how the witnesses would have helped his case and did not present the witnesses at the evidentiary hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or

present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit these witnesses might have offered to [Grimes's] case. *Id.* Applying the *Barker* balancing test, [Grimes] has failed to show that he received the ineffective assistance of counsel for counsel's failure to raise a speedy trial violation on direct appeal of his conviction.

[Grimes] also contends that trial counsel was ineffective for failing to argue the preindictment delay issue competently on direct appeal because "a competently argued due process issue would have been cause for reversal of his judgment." Generally, to establish a due process violation stemming from a preindictment delay, an accused must prove the following prerequisites, also known as the *Marion-Dykes* test: (1) there was a delay; (2) the accused sustained actual prejudice as a direct and proximate result of the delay; and (3) the State caused the delay in order to gain a tactical advantage over the accused or to harass the accused. *State v. Utley*, 956 S.W.2d 489, 495 (Tenn. 1997) (citing *United States v. Marion*, 404 U.S. 307, 324-25 (1971), and *State v. Gray*, 917 S.W.2d 668, 671 (Tenn. 1996)); *see also State v. Carico*, 968 S.W.2d 280, 284-85 (Tenn. 1998).

On direct appeal of [Grimes's] conviction to this court, this court found that [Grimes] was not entitled to relief because he failed to show that the State caused the delay to gain a tactical advantage or that he was prejudiced by the delay. *Jamie N. Grimes*, No. M2012-00530-CCA-R3-CD, 2013 WL 576130, at *5. [Grimes] also failed to present any proof of prejudice at the post-conviction evidentiary hearing. Therefore, even if trial counsel was deficient for failing to argue the issue competently on direct appeal, [Grimes] has failed to show he was prejudiced by the deficiency.

Finally, [Grimes] contends that he received the ineffective assistance of counsel because trial counsel failed to communicate with him regarding trial and appellate strategy, plea offers, and the severe consequences of a conviction under the Drug-Free School Zone Act. Trial counsel testified at the evidentiary hearing that he represented [Grimes] in previous cases, that they established a working relationship, and that [Grimes's] family hired him in this case. He said that he and [Grimes] did not have any trouble communicating, that [Grimes] cooperated with him, and that they "collaborated" on their research of the joinder issue. [Grimes], who called trial counsel to testify at the hearing, did not question counsel about counsel's trial or appellate strategy, any plea offers, or counsel's communications with [Grimes] about potential punishments under the Drug-Free School Zone Act. The post-conviction court accredited trial counsel's testimony and found that he communicated with [Grimes]. Nothing preponderates against the finding of the post-conviction court. Thus, [Grimes] is not entitled to relief on this issue.

*Grimes v. State*, 2019 WL 117167, at *4–6. The TCCA also rejected Grimes's argument that the State's violation of the mandatory joinder rule interfered with trial counsel's ability to negotiate

and defend him, noting that Grimes was "not entitled to relief on th[at] issue" because the TCCA "previously determined [on direct appeal] that the offenses committed on November 10 and December 8, 2006, were not part of the same criminal episode." *Id.* at *6. The Tennessee Supreme Court denied Grimes's application for permission to appeal on May 20, 2019. (Doc. No. 15-23.)

On July 9, 2019,[2] Grimes initiated this action by filing a pro se form petition under 28 U.S.C. § 2254 (Doc. No. 1) and a motion to appoint counsel (Doc. No. 2). The Court denied Grimes's motion to appoint counsel without prejudice and ordered Mays to respond to the petition. (Doc. No. 7.) On August 16, 2019, Grimes filed another motion for appointment of counsel (Doc. No. 9), a motion to amend his petition (Doc. No. 10), and a motion to add to his petition (Doc. No. 11). The Court denied Grimes's second request for counsel without prejudice, granted his motions to amend and add to his petition, and extended the time for Mays to file a response addressing "all claims of the petition as amended." (Doc. No. 14, PageID# 64.)

As amended, Grimes's petition asserts claims that: (1) the offense should have been joined with one for which he had been previously tried and convicted; (2) his Sixth Amendment right to a speedy trial was violated; (3) the indictment was defective because it did not cite the drug-free school zone statute; (4) the State improperly withheld its contract with the confidential informant used in this case; (5) the trial court erred by permitting the jury to view a transcript of an audio recording of the offense; (6) the evidence is insufficient to support Grimes's conviction; (7) trial counsel provided ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984);

---

[2] Under the standard governing filings by pro se incarcerated litigants—known as the "prison mailbox rule"—"a pro se prisoner's [pleading] is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002)). Courts assume, "absent contrary evidence," that an incarcerated person delivered a legal filing to prison authorities "on the date he or she signed [it]." *Id.* Because Grimes is incarcerated, the Court deems his petition to be filed on July 9, 2019, the date it was signed. (Doc. No. 1.)

(8) counsel provided ineffective assistance on direct appeal under *Evitts v. Lucey*, 469 U.S. 387 (1985); and (9) post-conviction counsel provided ineffective assistance under *Martinez v. Ryan*, 566 U.S. 1 (2012). (Doc. Nos. 1, 10, 11.)

Mays answered Grimes's petition, conceding that it is timely filed and that Grimes exhausted his state court remedies, but arguing that Grimes's claims should be denied under Habeas Rule 2(c) because Grimes has not provided sufficient facts to support his claims. (Doc. No. 17.) Mays also argues that, if the Court were to assume that Grimes's petition references the claims he raised in state court proceedings, then the petition should be denied because Grimes's joinder claim is not based on federal law, his transcript claim is procedurally defaulted, and Grimes has not satisfied the requirements of § 2254(d) for any of his claims. (*Id.*)

Grimes filed several pro se motions (Doc. Nos. 20–22), an affidavit (Doc. No. 25), and a pro se reply and supporting memorandum (Doc. Nos. 23, 24). After counsel entered an appearance on Grimes's behalf (Doc. No. 26) and moved for "an extension for the filing of necessary filings" (Doc. No. 27, PageID# 841), the Court denied Grimes's pro se motions as moot and ordered Grimes's counsel "to make whatever further filings she deems necessary" by April 6, 2020 (Doc. No. 28). Grimes did not file anything by that deadline and, on April 16, 2020, the Court ordered him to file a notice of his intent to make any further filings and to show cause why he should be permitted to do so after the Court's deadline. (Doc. No. 29.)

Grimes filed a notice stating that he anticipated making supplemental filings and requesting an additional sixty days to do so. (Doc. No. 30.) The Court granted that request, ordering Grimes to "make any supplemental filings in support of his petition by June 23, 2020" and permitting Mays to respond to any supplemental filings. (Doc. No. 33, PageID# 850.) The Court informed Grimes that if he could not comply with future deadlines, he must file a motion for an extension

of time. (Doc. No. 33.) On July 6, 2020, the Court noted that Grimes had not made any supplemental filings or moved for further extensions of time, and found "that his petition is ripe for review based on the current record and filings." (Doc. No. 36, PageID# 856.)

Grimes then filed a motion for "a final two month extension on his reply" (Doc. No. 37, PageID# 857), which the Court denied due to Grimes's failure to demonstrate that the delay in moving for an extension was due to excusable neglect (Doc. No. 38). Grimes filed another motion, seeking an additional thirty days "to reply to [Mays's] Response to [the] Petition[ ] for Habeas Corpus" and arguing that his failure to file a motion before the deadline was due to excusable neglect. (Doc. No. 39, PageID# 862.) The Court granted that motion and ordered Grimes to "make any supplemental filings by August 7, 2020." (Doc. No. 40, PageID# 863.)

On August 7, 2020, Grimes filed a supplemental reply to Mays's response, arguing that Grimes is entitled to habeas relief under the Fifth, Sixth, and Fourteenth Amendments and because of violations of Tennessee law. (Doc. No. 41.) The supplemental reply addresses Grimes's first seven claims, but does not discuss his claims for ineffective assistance of appellate or post-conviction counsel. (*Id.*) Mays did not file a sur-reply.

Grimes moved for oral argument on his habeas petition (Doc. No. 42), which the Court denied, noting that it would "schedule oral argument if it will assist in the resolution of the petition" (Doc. No. 43). The petition is ripe for review, and the Court finds that oral argument is not necessary for its resolution.

**II.     Legal Standard**

Grimes's habeas petition is governed by 28 U.S.C. § 2254(d), as amended by AEDPA. The statute provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

> claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). The Supreme Court has repeatedly held "that AEDPA, by setting forth [these] necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *White v. Wheeler*, 577 U.S. 73, 77 (2015) (quoting *Burt v. Titlow*, 571 U.S. 12, 19 (2013)).

Under § 2254(d)(1), a state court's decision is "contrary to" clearly established federal law only "if the state court applies a rule different from the governing law set forth in" the Supreme Court's holdings "or if it decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A state court's "decision is an unreasonable application of [the Supreme Court's] clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case[.]" *White v. Woodall*, 572 U.S. 415, 426 (2014). Notably, to be actionable under § 2254(d)(1), a state court's unreasonable application of Supreme Court precedent "'"must be objectively unreasonable, not merely wrong; even clear error will not suffice."'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Woodall*, 572 U.S. at 419); *see also Williams*, 529 U.S. at 411 ("[A] federal habeas court may not issue the writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."). Instead, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Under § 2254(d)(2), habeas relief is available if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). However, the statute provides that a state court's factual determinations "shall be presumed to be correct" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1); *see also Davis v. Ayala*, 576 U.S. 257, 271 (2015) ("State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" (quoting *Rice v. Collins*, 546 U.S. 333, 338–39 (2006))).

AEDPA thus "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66 (2011) (quoting *Felkner v. Jackson*, 562 U.S. 594, 598 (2011)). The Supreme Court has held that the AEDPA standard is difficult to meet "because it was meant to be." *Harrington*, 562 U.S. at 102; *see also Burt*, 571 U.S. at 20; *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The statute enforces the principle "that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)); *see also Woods*, 575 U.S. at 316.

AEDPA also imposes a "total exhaustion requirement," providing that "[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State" with respect to each claim, or such

remedies are no longer available. *Rhines v. Weber*, 544 U.S. 269, 274 (2005) (second and third alteration in original) (quoting 28 U.S.C. § 2254(b)(1)(A)); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."). This "exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). AEDPA therefore requires a petitioner to "properly present[] his or her claims through one 'complete round of the State's established appellate review process.'" *Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (quoting *id.* at 845). A petitioner incarcerated in Tennessee exhausts all available state remedies under AEDPA once the TCCA denies a claim of error. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39 (exhaustion of remedies)).

"Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Under the doctrine of procedural default, a petitioner who may no longer present claims in state court because he or she failed to meet state procedural requirements must "demonstrate cause for his [or her] state-court default of *any* federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). The one exception to this doctrine "is the circumstance in which the habeas petitioner can demonstrate a sufficient probability that [the federal habeas court's] failure to review his [or her] federal claim will result in a fundamental miscarriage of justice." *Id.*

### III. Analysis

#### A. Insufficiency of Grimes's Petition

Mays argues that Grimes's claims should be dismissed because "the amended petition does not include sufficient specific facts to support [his] myriad claims" and, "[w]ithout more specific pleadings, [Mays] and th[e] Court are precluded from addressing the merits of such claims." (Doc. No. 17, PageID# 745.) Grimes has not addressed this argument in his pro se reply or the supplemental reply he filed through counsel.

Habeas Corpus Rule 2(c) requires that a petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground[.]" Habeas Corpus R. 2(c)(1), (2). This rule "deviates from the 'notice pleading' rules applicable in other federal civil cases" and "mandates that the petitioner at least summarily plead specific facts supporting each claim for relief." 1 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice & Procedure § 11.6 (7th ed. updated Dec. 2021). A habeas petition that "contain[s] mere conclusions of law, unsupported by any facts" is "obviously deficient" because "it is the relationship of the facts to the claim asserted that is important[.]" Habeas Corpus R. 2(c) advisory committee's note to 1976 adoption. A petitioner's failure to fulfill the pleading requirements of Habeas Rule 2(c) provides an appropriate basis for dismissal. *See, e.g.*, *Guerrero v. Ford*, No. 1:17-cv-00103, 2019 WL 330878, at *12 (M.D. Tenn. Jan. 25, 2019) (dismissing claim under Habeas Rule 2(c) where petitioner "d[id] not set forth any facts to support his allegation . . ."); *Creech v. Taylor*, Civ. Action No. 13-165, 2013 WL 6044359, at *2 (E.D. Ky. Nov. 14, 2013) (dismissing habeas petition containing only "[c]onclusory allegations with no accompanying evidentiary support"); *Morris v. Motley*, No. 3:07-CV-P420-S, 2007 WL 3171538, at *1 (W.D. Ky. Oct. 26, 2007) (dismissing habeas petition lacking factual allegations or other specifics).

The claims in Grimes's petition, as amended, are not supported by sufficient facts to satisfy Habeas Rule 2(c). (Doc. Nos. 1, 10, 11.) The form Grimes used to file his initial petition instructs filers to "[s]tate the facts supporting each ground" and provides space to do so, but Grimes left the space blank and did not explain the facts underpinning his claims anywhere else in the petition. (Doc. No. 1, PageID# 5.) Grimes claims "[t]hat this offense should have been mandatorily joined with another offense for which he [had] previously been tried and convicted" but does not identify the prior offense to which this claim refers. (*Id.*) He argues "[t]hat his Sixth Amendment right to a speedy trial was violated" but has not identified how this alleged violation occurred. (*Id.* at PageID# 6.) His allegations "[t]hat the [S]tate improperly withheld its contract with the confidential informant used in this case" (*id.* at PageID# 10) and that the "[t]rial [c]ourt erred by allowing the [v]iew of a [t]ranscript of an [a]udio [r]ecording of the [o]ffense" (Doc. No. 11, PageID# 56, ¶ 5) likewise fail to explain the factual circumstances regarding either claim or to identify facts indicating that either claim constitutes a violation of federal law. By the same measure, Grimes's sufficiency of the evidence and ineffective assistance claims are "mere conclusions of law, unsupported by any facts" and are insufficient to suggest the factual basis for his claims. Habeas Corpus R. 2(c) advisory committee's note to 1976 adoption.[3]

Grimes also asserts that his claims "were exhausted through the Tennessee [c]ourts" (Doc. No. 11, PageID# 55), but this type of general reference to the state court records does not provide sufficient factual basis for Grimes's claims. Federal courts are not required to review a petitioner's entire state court record to determine whether facts supporting the petitioner's claims exist. *Adams*

---

[3] Grimes's bare assertion "[t]hat the indictment against him was defective because it failed to cite to the drug-free school zone statute" is also a legal conclusion that falls short of Habeas Rule 2(c)'s fact-pleading requirements. (Doc. No. 1, PageID# 8.) To the extent that this statement could be liberally construed to provide the information needed to apprise the Court of the nature of Grimes's claim, the Court will address the claim separately below.

*v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990). Although courts are required to liberally construe pro se pleadings, a habeas petitioner may not "place the onus of creating a federal claim on the reviewing court." *Mills v. Larose*, No. 1:13CV1059, 2015 WL 687829, at *11 (N.D. Ohio Feb. 18, 2015) (citing *Burkey v. Deeds*, 824 F. Supp. 190, 193 (D. Nev. 1993)); *see also Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) ("Liberal construction does not require a court to conjure allegations on a litigant's behalf[.]"). "Requiring such an exhaustive factual review of entire state court records would pose an insuperable burden on already strained judicial resources." *Armontrout*, 897 F.2d at 333. Further, because Grimes has argued that his appellate and post-conviction counsel provided ineffective assistance but has not identified the specifics of the alleged inadequacy (Doc. No. 11), it would not be appropriate to rely on the facts cited in those attorneys' briefs—which may be the basis of Grimes's claims of ineffective assistance—in construing Grimes's federal habeas claims.

The supplemental reply Grimes filed through counsel explains the factual basis for several of his claims (Doc. No. 41), but that filing does not serve to amend Grimes's petition. Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend its pleading once as a matter of course within" "21 days after serving it, or" "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)–(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The supplemental reply was filed long after Mays filed a responsive pleading, and the docket contains no indication that Mays has consented to the filing of an amended petition. Grimes states that his supplemental reply is filed "pursuant to Federal Rule[ ] of Civil Procedure 15(a)" (Doc. No. 41, PageID# 865) but, while Grimes's counsel sought numerous

extensions of time to supplement his pro se filings, none of those requests sought leave to amend the complaint under Rule 15(a)(2) (Doc. Nos. 27, 30, 37, 39). Further, Grimes's supplemental filing is identified as a "supplemental reply[,]" not an amended petition (Doc. No. 41, PageID# 865), and Grimes's later-filed motion for oral argument refers to this document as a "supplemental response" and identifies Grimes's petition filed in July 2019 as the operative pleading (Doc. No. 42). For these reasons, the Court cannot construe Grimes's supplemental reply as an amended petition or a motion for leave to amend.

Grimes first explains the factual basis for his claims in his supplemental reply. (Doc. No. 41.) However, it is well established that arguments raised for the first time in a reply or traverse are not properly before a district court. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); *Jalowiec v. Bradshaw*, 657 F.3d 293, 311–12 (6th Cir. 2011). The Sixth Circuit has held that, even where claims identified in a reply "share a common legal theory as those in [the] petition[,]" they constitute new claims if "they concern new factual bases that were not presented in the petition . . . ." *Royster v. Warden, Chillicothe Corr. Inst.*, No. 18-3362, 2018 WL 8138770, at *2 (6th Cir. Aug. 23, 2018). Because Grimes explains the factual basis for his claims for the first time in his supplemental reply (Doc. No. 41), those facts are not properly before the Court. Grimes's petition does not properly identify the facts underlying his claims for relief, and therefore should be denied.

B.  **Grimes's Claim That the Indictment Was Defective**

To the extent that Grimes's bare statement "[t]hat the indictment against him was defective because it failed to cite to the drug-free school zone statute" (Doc. No. 1, PageID# 8) could be liberally construed to explain the basis for that claim, the Court cannot grant Grimes relief. On direct appeal, the TCCA found that "the indictment stated that the offense occurred within 1,000 feet of a school[,]" which "was sufficient to provide [Grimes] notice of the charged offense." *State v. Grimes*, 2013 WL 5761301, at *5. Grimes has not made any showing that this decision

18
Case 3:19-cv-00585   Document 44   Filed 08/19/22   Page 18 of 19 PageID #: 911

"was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Accordingly, Grimes's request for relief on this ground must be denied.

## IV. Recommendation

For the foregoing reasons, the Magistrate Judge RECOMMENDS that Grimes's petition (Doc. Nos. 1, 10, 11) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 19th day of August, 2022.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge